STANLEY A. HALA, Jr., PLAINTIFF-RESPONDENT, v. BEN-
JAMIN L. WORTHINGTON, Jr., AND BENJAMIN L.
WORTHINGTON, Sr., DEFENDANTS-APPELLANTS.

Submitted February 13, 1943—Decided April 29, 1943.

For the plaintiff-respondent, *Carey & Lane* (*John W. McGeehan, Jr., Robert Carey* and *Harry Lane,* of counsel).

For the defendants-appellants, *Townsend & Doyle* and *Dolan & Dolan* (*Mark Townsend, William A. Dolan* and *William G. McLaughlin,* of counsel).

The opinion of the court was delivered by

Porter, J. This is an appeal from a judgment for the plaintiff, who has a verdict for $37,000 against both defendants for personal injuries suffered by him in an automobile accident. The plaintiff, Stanley. A. Hala, Jr., was a guest passenger in an automobile driven by the defendant Benjamin L. Worthington, Jr., and owned by his father, the defendant Benjamin L. Worthington, Sr. The action is based upon the allegation that the proximate cause of the accident was the negligence of the driver and that the owner had authorized

his son to drive, with full knowledge of his physical incompetency due to defective eyesight.

The undisputed facts are that Worthington, Jr., had used his father's automobile on Saturday afternoon, September 28th, 1940, on an errand for him and that he took with him his fiancee, Miss Irma Lee McHorney. This couple had dinner that evening with Worthington's parents at their home in Glen Ridge, and left there to call on Mr. and Mrs. Hala at Montclair at about nine-thirty. Mrs. Hala and Miss McHorney were friends, but neither Mr. or Mrs. Hala had previously met Mr. Worthington, Jr. About twelve-thirty A. M. the party went in the Worthington car to a roadside refreshment stand at Verona, which was nearby, and had coffee and sandwiches. While at this place, reference was made to the fact that Mrs. Hala had just had a birthday, whereupon it was suggested by Worthington, Jr., that that justified their having a drink, and he invited them to go as his guests to "The Well," a place of amusement in West Caldwell, about three or four miles distant. The route to "The Well" was in a westerly direction on Bloomfield Avenue. Worthington, Jr., was driving. Miss McHorney sat along side of him, and Mr. and Mrs. Hala were in the rear seat. After passing through the business section of Caldwell, Bloomfield Avenue is seventy feet wide, paved with asphalt and with a thirty foot roadway on each side of a park area, ten feet wide, in the center. At a point where the road goes down a grade of about six per cent. and curves to the left the automobile left the road, its right wheels going over a four inch curb on the right side, and continued with two wheels on the road and two wheels on the dirt sidewalk, turning left with the curve, traveling a distance of fifty-seven feet when it came into head-on collision with a large tree. This tree was about 150 feet from where Worthington says he first felt the car swerve to the right. The roadway at that place was well lighted. The two women died as a result of their injuries, one while being taken to the hospital, and the other within a few hours of reaching there. Both men suffered broken legs and other injuries. Hala was confined to the hospital for over a year and a half. One of his legs became infected, and amputation was neces-

sary. His expenses for doctors, nurses, hospital, &c., were about $12,000. Suits were brought on behalf of the next of kin of the two women under the Death Act and were tried together with the Hala suit before Judge William A. Smith in the Essex Circuit. The verdicts in those cases were set aside by the trial court on rules to show cause because of their inadequacy. We have no concern with those cases, the appeal being in the Hala case only. The only witnesses to the accident were Hala and Worthington, Jr. Both made signed statements within a day or so of the accident to the local police and later to the prosecutor's officers, and both testified at the trial. There were other witnesses who testified to what they observed upon coming upon the scene shortly after the accident. There was also evidence of the condition of the automobile, of marks on the curb and tire marks indicating the course the automobile traveled after it left the road, measurements of distances, &c. Photographs and a diagram were also in evidence.

It appears that Worthington, Jr., had suffered from birth with defective eyesight and that he has worn glasses since he was four years old. He had inward strabismus of the left eye, congenital cataracts on both eyes, and near-sightedness in both eyes. He left college in February of 1937, returning in September of 1938, so that he might have necessary operations on his eyes. In all there were seven operations between February, 1937, and August, 1939, some to correct the strabismus and others for the cataracts. The last operation was two weeks before the accident, at which time he was confined to the hospital for one week, and had an appointment with the doctor to have his eyes examined the day after the accident. He wore one kind of glasses for reading and another kind for distant use. He had the latter pair on at the time of the accident. The expense of the eye treatment and operations was borne by his father who knew the nature and extent of the eye condition, having been so informed by the attending doctor. Worthington, Jr., testified that the operations had improved his eye condition and that with the use of his glasses he could see quite well but that even so, he did not have normal vision. He demonstrated his ability to see

objects in the court room by tests made during the trial. His father was prevented by illness from testifying. The eye specialist who had operated and treated the eyes did not testify, nor was his absence explained. There was testimony of the drinking of intoxicating liquor during the evening at the Hala home, but no testimony that anyone was affected thereby. Two rye highballs were served to each, the members of the party leaving before the second drink had been consumed. Hala testified that Worthington, Jr., was not affected by the drink and that he drove normally, although he did say that he had had two drinks. Worthington, Jr., said that the liquor had not affected him and that he had not in fact had two drinks but, on the contrary, had only taken but a few sips from the first drink that was served. The plaintiff did not allege intoxication and the case was not tried on that theory, and argues that neither of the men was in fact under the influence of liquor. Worthington, Jr., in the first statement made by him on the day of the accident to the local police officer said that he had no recollection of anything after he had left the Verona refreshment stand. To the prosecutor's officer later he said and so testified that he was driving twenty-five to thirty miles per hour and that when he reached the curve in the road, he tried to turn left but that the car did not respond, the steering wheel turning in his hands, and he could not prevent its leaving the road. Hala said that the car was not being driven fast, that he did not feel any brakes being applied, nor anything unusual until he heard the crash. Whether an examination of the car in its wrecked condition after the accident would have demonstrated the condition of the steering apparatus before the accident, does not appear.

It appears that Worthington, Jr., obtained a driver's license in September, 1938, and renewed it in 1939. He testified that previously, just when was not stated, he had a beginner's permit and that in attempting to learn to drive he realized that he would be unable to pass the physical examination because of the condition of his eyes. The New Jersey licenses were issued conditionally that he wear corrective glasses while driving. He spent the winter of 1939 and 1940 with his parents in Florida. He drove his father's car while there. His

driver's license expired on March 31st, 1940. A few days prior to its expiration he applied for and obtained a Florida driver's license. It was unconditional. He stated in his application for it that he had no physical defects which might affect his operation of a motor vehicle. When he returned to this state, he did not obtain a license here, believing that he was privileged to drive under authority of the Florida license.

The first point argued as grounds for reversal is that the trial court erred in its charge to the jury in three respects, hereinafter referred to as A, B and C. What the court said is as follows:

A. "\* \* \* But there were two circumstances arising since that the license was granted, and without covering all the testimony, I refer in particular to the testimony as to his obtaining a Florida license and his not obtaining a subsequent New Jersey license. I also refer to the subsequent treatment and operation he had for his eyes. He was operated upon, I believe, on September 19th the last time and he left the hospital on September 22d, which was just about a week before this accident happened. He says that on the Thursday before the accident he had operated his car at night and successfully. The evidence on this point is such that it is for the jury to say whether the father is to be held responsible under all the legal rules. \* \* \*"

B. "\* \* \* I would suggest that in your consideration of the case you first decide whether or not the son was responsible in this accident, whether he is going to be held. \* \* \* There has been evidence here of the son's not having a New Jersey license at the time \* \* \*. But his failure in the case to do so is a circumstance for you to consider as bearing on the question whether or not he was justified in driving this car and whether or not his father was justified in letting him drive the car. In other words, it goes to this question of his physical condition."

C. "\* \* \*. You have to determine whether it happened through the failure of this defendant to exercise reasonable care in the operation of his car, or whether due to lack of vision. \* \* \*"

It does not seem that any specific exception was taken to

either A or C, so that the court was not apprized of the alleged error and therefore had no opportunity to make such correction as he might have considered necessary. *McKenna* v. *Reade,* 105 *N. J. L.* 408; 144 *Atl. Rep.* 812. However, we perceive no errors in the challenged portions of the charge. It is argued that the effect of what the court charged was to permit the jury to find the son incompetent to drive because of defective vision or because he was driving under a Florida license or the circumstances under which he obtained it. We do not think that the charge is susceptible of that interpretation, nor that the jury could have obtained any such impression from it. The charge must be considered as a whole. A reading of it leads us to the conclusion that it was fair and comprehensive. It does contain comments on the testimony which, however, were proper and in accordance with the proofs and moreover contained a clear instruction to disregard any comment which was at variance with their recollection of the facts.

Points 2 and 3 urged as grounds for reversal have to do with the refusal of the court to nonsuit and direct a verdict in favor of the father. It is argued that there was no causal connection proven between the alleged defective eyesight of the defendant driver and the happening of the accident. We are not in accord with that view, but are of the opinion that there was a factual question clearly raised by the proofs and the inferences properly drawn therefrom, that the driver had been unable to observe the curve in the road due to defective vision and that it was the proximate cause of the accident. In other words the jury could find that the cause of the accident was negligence in driving with defective eyesight and further that the driver's incompetency in that respect was known to the father. Whether or not this accident occurred because of the defective vision of the driver, which was the proximate cause of the accident, and if so whether the father had known of that incompetency and was negligent in permitting him to drive his car were facts clearly raised by the proofs. This court decided in *Wilson* v. *Brauer,* 97 *N. J. L.* 482; 117 *Atl. Rep.* 699, the principle that an owner of an automobile is responsible for the negligence of an incom-

petent driver, whom he permits to drive, with knowledge of that incompetency. Also compare *Sheridan* v. *Arrow Sanitary Laundry Co.*, 105 *N. J. L.* 608; 146 *Atl. Rep.* 191; *Patterson* v. *Surpless,* 107 *N. J. L.* 305; 151 *Atl. Rep.* 754.

Point 4 which is urged for reversal is that the court erred in failing to charge this request, "There is no competent evidence that Benjamin Worthington, Jr., was an incompetent driver because of defective vision." For the reasons that have already been stated, we think that there was no error in such refusal.

Point 5 urged as a ground for reversal is that the court committed error in charging the jury, " '* * * as he owed the other two [Hala] in the car,' because under the testimony adduced here it seems to me it is shown that an invitation to them was extended so that they were there under the condition that the defendant owed them the duty of exercising reasonable care for their own safety." The argument is that the court was deciding as a matter of law the question of invitation. We think that this was nothing more than comment by the court on the facts and did not have the effect claimed. Especially is this so when it is noted that the court explicitly in another part of the charge instructed the jury that it must find the question of fact as to invitation. In any event, the question of invitation does not seem to be in dispute. Both the plaintiff and Worthington, Jr., testified that the trip was being taken at Worthington's express invitation.

Under points 6 and 7 the argument is made that the court erred in failing to charge as requested that the plaintiff was under a duty to use reasonable care for his own safety. There was no request so to charge. At the completion of the charge, counsel orally requested that it be charged, to which the court replied, "That I refuse to do. I was not requested to and I do not see that there is anything brought to my attention which calls for it." We do not find any testimony of any conduct on the part of the plaintiff which raised a question of his failure to exercise reasonable care or of his being contributorily negligent. He had no control of or right to control the operation of the car. He testified that there was nothing untoward in its operation, that the driver was not intoxicated;

nothing, in other words which called upon him to exercise the duty of remonstrating, refusing to ride, or in asking to be permitted to leave the car. Nor is there any proof that the plaintiff, who had never met Worthington, Jr., until a few hours before the accident, had any knowledge whatever of any defective vision. There would therefore, it seems to us, have been no application to the principles of law requested to be charged under the proofs in the case. We conclude that the refusal of the court to charge as requested was not error. Compare *Altieri* v. *Public Service Railway Co.*, 103 *N. J. L.* 351; 135 *Atl. Rep.* 786; *Wilcox* v. *Christian and Missionary Alliance*, 124 *N. J. L.* 527; 12 *Atl. Rep.* (2d) 709; *Hoffman* v. *Trenton Times*, 125 *N. J. L.* 450; 16 *Atl. Rep.* (2d) 814.

Finally, points 8 and 9 allege error in permitting Worthington, Jr., over objection, to answer these two questions: *Q.* "Didn't you know that a New Jersey resident in a New Jersey car living here and driving it had to have a New Jersey driver's license?" *Q.* "You knew that the statute, the Traffic Act of this state did not make such provision, didn't you?" The objection to these questions is that the question of his illegally operating the car was not an issue in the case and that in neither the defendant's demand for bill of particulars nor in the complaint is such an allegation made. We think the questions were pertinent and admissible. The bills of particulars did charge a violation of the statute which requires operators of automobiles to be licensed. More than that, these questions were asked on cross-examination and went to the credibility of the witness concerning his testimony of his belief that he was qualified to drive under the Florida license.

The judgment under review will be affirmed, with costs.

On appeal of Benjamin L. Worthington, Jr.—

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, THOMPSON, JJ. 13.

*For reversal*—None.

170

On appeal of Benjamin L. Worthington, Sr.—

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, DONGES, PERSKIE, PORTER, DEAR, THOMPSON, JJ. 8.

*For reversal*—CASE, BODINE, HEHER, WELLS, RAFFERTY, JJ. 5.